```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
CARTIER INTERNATIONAL, N.V. and,         :
CARTIER CREATION STUDIO, S.A.,           :      09 Civ. 1313 (SHS)
                                         :
                      Plaintiff,         :
                                         :      OPINION & ORDER
       -against-                         :
                                         :
QVC, INC.; TWI WATCHES, LLC; JMAM, LLC   :
AND JOHN DOES 1-20,                      :
                                         :
                      Defendants.        :
------------------------------------------------------------ x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/31/09

SIDNEY H. STEIN, U.S. District Judge.

In February 2009, plaintiffs Cartier International, N.V., and Cartier Creation Studio, S.A., (collectively "Cartier") sued defendants QVC, Inc., TWI Watches LLC, JMAM, LLC, and John Does 1-20 alleging that watches manufactured by TWI and sold on the QVC television channel infringed a variety of the trademarks held by Cartier. According to Cartier, in June the parties reached a firm settlement of their dispute; QVC contends that no binding agreement was entered into. Cartier has now moved to enforce that alleged settlement agreement against QVC. Because this Court finds that the parties never agreed to the material terms of the settlement, Cartier's motion to enforce the settlement is denied.

I.  **BACKGROUND**

For approximately two weeks in March and April 2007, QVC offered for sale the watches supplied by TWI that are at issue in this action. (Declaration of Jacqueline Lesser ("Lesser Decl.)" at ¶ 3.) As party to the supply agreement, TWI provided representations and warranties to QVC that the watches did not infringe any rights of third parties and undertook to indemnify QVC in the event any entity were to claim infringement. (Id.) Cartier quickly objected to the sales of the TWI watches and QVC ceased selling the relevant watches. (Id. at ¶ 3.) Cartier filed the complaint in this action

in February 2009, alleging that one set of watches sold on QVC infringes on the trade dress and design patent rights it holds in its "SANTOS" or "Santos de Cartier" watch design. These watches were sold by defendant TWI to QVC, who in turn marketed them to the general public on television. These claims are the ones that were purportedly settled in June 2009.

Magistrate Judge Frank Maas, to whom this action had been referred for general pretrial purposes, scheduled a settlement conference for June 5. Cartier contends that a final settlement agreement was reached at that conference and that all of the terms of its agreement were set forth on the record that day. The entirety of the terms as set forth by Magistrate Judge Maas on the record that day is as follows:

> Having conferred with the parties in this case at some length, it's my understanding that one half of the case essentially has been resolved, and that the case will be dismissed with prejudice and without costs as against TWI Watches LLC and QVC insofar as the claims against QVC arise out of its dealings with TWI, on the understanding that the TWI Watches and QVC, which as a practical matter probably means TWI Watches, will pay the sum of forty-five thousand dollars promptly to Cartier.
>
> Additionally, the defendants will consent to the entry of the injunction requested in the complaint. It's understood that the amount of the settlement will be kept confidential by all parties and that Cartier will make no effort to notify the press or otherwise advertise the injunctive aspect of the relief awarded against QVC.
>
> And I assume that the parties will consent to my exercise of jurisdiction of the limited purposes of entering the order of discontinuance on those terms.

(Transcript of June 5, 2009 conference ("Tr."), attached to the declaration of Milton Springut ("Springut Decl.") as Ex. B at 2). As is clear from that transcript, no specifics concerning the terms of the injunctive relief were disclosed or agreed to on the record; instead, the terms of the injunction were simply that "the defendants [QVC and TWI] will consent to the entry of the injunction requested in the complaint." (Id.)

One week later, Cartier circulated a seven-page long proposed settlement agreement and separate eight-page long consent judgment to TWI. (Lesser Decl. ¶ 9; Ex. D.) Each document contained several terms that were not set forth on the record at the June 5 settlement conference. For

2

example, Cartier had nserted a clause that stated in the event of any breach of the agreement or violation of the judgment it would be awarded attorneys' fees. (Lesser Decl. Ex. D at ¶¶ 3, 9.) Cartier also inserted a provision that would make the settlement binding on the parties' parent companies and "affiliates," without defining the scope of the term "affiliates." (Id. at ¶ 11.) Cartier also inserted a merger clause, which stated that the settlement agreement represented the parties' entire agreement and that any amendments to it had to be in writing.

More importantly, the separate proposed eight-page consent judgment accompanying Cartier's June 12 proposed settlement agreement, (Lesser Decl. Ex. D), included various provisions that were not articulated on the record on June 5. First, the consent judgment included detailed, broad definitions of Cartier's "Santos Trade Dress" (Id. at ¶ 2). Second, it contained an injunction prohibiting QVC from manufacturing, marketing, or selling products incorporating the Santos Trade Dress design, as defined. (Id. at ¶ 5). The injunction also prohibited any representations by either defendant that <u>any</u> of their goods—not simply the watches at issue in the complaint—are authorized by Cartier and prohibited QVC from "otherwise competing unfairly with Cartier in any manner." (Id.) In addition, Cartier inserted into the proposed consent judgment provisions that stated unequivocally that Cartier "is the owner of the SANTOS Trade Dress," and that "[s]uch trade dress rights are valid and subsisting." (Id.) The record of the June 5 conference did not contemplate that any of those provisions would be part of the consent judgment.

Responding drafts of the documents were prepared by defendants and Cartier then prepared yet another draft in reply. (Lesser Decl. ¶¶ 12-13; Ex. H.) After Magistrate Judge Maas was informed that the parties could not agree on the wording of the injunction, he held a telephone conference with the parties but no agreement was reached regarding the terms of the injunction. (Lesser Decl. ¶¶ 14-15; Ex. G.) Cartier then moved to enforce the settlement agreement.

QVC argues that the purported settlement agreement was not binding because the parties never reached a final settlement agreement. Specifically, QVC argues that (a) the parties never

3

intended to be bound absent a writing; (b) many of the terms of the contract had not been agreed upon; and (c) the agreement is the type of contract that is usually committed to writing. Because this Court finds that the parties never reached an actual agreement regarding the settlement, the proposed agreement is not enforceable against QVC. Accordingly, Cartier's motion to enforce the settlement agreement is denied and the litigation will move forward.

## II. DISCUSSION

### A. Legal Standard

A settlement agreement is interpreted according to general principles of contract law. Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005).[1] Once entered into, the contract is binding and conclusive. Janneh v. GAF Corp., 887 F.2d 432, 436 (2d Cir. 1989), *abrogated on other grounds by* Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994). When a party makes a deliberate, strategic choice to settle, a court cannot relieve it of that choice simply because the party's assessment of the consequences of the contract was incorrect. United States v. Bank of N.Y., 14 F.3d 756, 759 (2d Cir. 1994).

Parties may enter into a binding contract orally and the intention to commit an agreement to writing, standing alone, will not prevent contract formation. Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985) (applying New York law). Consequently, a "voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed." Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL-CIO, 402 F.3d 314, 318 (2d Cir. 2005) (per curiam). The settlement remains binding even if a party has a change of heart between the time it agreed to the

---

[1] It is unclear whether the settlement of federal claims is governed by New York law or federal common law. Powell v. Omnicom, 497 F.3d 124, 129, n.1 (2d Cir. 2007). Because the U.S. Court of Appeals for the Second Circuit has found that there is no material difference between the applicable New York state law or federal common law, this Court need not decide this choice of law question now. Id. (citing Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 322 (2d Cir.1997)). Therefore, we will apply New York and federal common law interchangeably, as the Second Circuit did in Powell.

settlement and the time those terms are reduced to writing. <u>Millgard Corp. v. White Oak Corp.</u>, 224 F. Supp. 2d 425, 432 (D. Conn. 2002).

    B.    <u>The Parties Did Not Intend To Be Bound Absent a Writing</u>

Parties who do not intend to be bound until the agreement is reduced to a signed writing are not bound until that time. <u>Ciaramella v. Reader's Digest Ass'n</u>, 131 F.3d 320, 322 (2d Cir. 1997). Deciding whether the parties intended to be bound in the absence of a writing requires this Court to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. <u>Winston</u>, 777 F.2d at 80; <u>see also</u> <u>Ciaramella</u>, 131 F.3d at 323. "No single factor is decisive, but each provides significant guidance." <u>Ciaramella</u>, 131 F.3d at 323. After considering these factors, the Court concludes that the parties in this case did not intend to be bound by the settlement agreement until those terms were reduced to writing and signed by the parties.

    *1.*    *The parties made clear they did not intend to be bound absent a formal writing*

The record of the June 5 settlement conference reveals that TWI intended to pay Cartier a set sum to settle Cartier's claims, and that "the defendants will consent to the entry of the injunction requested in the complaint." (Tr. at 2.) Consistent with this understanding, Cartier circulated a draft agreement and consent judgment one week after the conference, and subsequent drafts followed. In the first draft, Cartier inserted a merger clause which stated that the settlement agreement "represents the entire agreement between the [p]arties" and "[n]o waiver, amendment or modification of [it] shall be effective unless in writing and signed by the party against whom the waiver, amendment or modification is sought to be enforced." Just as in <u>Ciaramella</u>, the presence of this merger clause and other language contained in the settlement agreement indicates that the parties did not intend to be

5

bound until the terms of the settlement documents were finalized and signed. See Ciaramella, 131 F.3d at 323.

### 2. *There has been no partial performance of the contract*

Neither side disputes that there has been no partial performance, such as payment by TWI of the proposed settlement amount and acceptance by Cartier. Although Cartier states as an ipse dixit that "this factor has no bearing" in this case, Second Circuit precedent suggests that the absence of part performance weighs against Cartier. See Ciaramella, 131 F.3d at 325; Winston, 777 F.2d at 82; see also Bear Stearns Inv. Prods. v. Hitachi Auto. Prods. (USA), 401 B.R. 598, 619 (S.D.N.Y. 2009).

### 3. *Many of the terms of the alleged contract have not been agreed upon*

The absence of any genuine meeting of the minds is reflected in the actions of the parties after the June 5 settlement conference. After the very same conference where Cartier alleges the settlement terms were finalized, the parties sent drafts of the settlement agreement and consent judgment back and forth in a sustained effort to in fact finalize the terms of the settlement. Cartier's first draft agreement and consent judgment contain a number of terms that were never set forth at the June 5 conference. Moreover, Cartier submitted multiple drafts, including one after the second settlement conference was held on July 1, 2009. The various drafts are indicative that the parties were still negotiating the final terms of the settlement agreement and that they had not yet reached a final agreement.

### 4. *The agreement at issue is the type of contract that is usually committed to writing*

Given that the agreement between QVC and Cartier contemplated permanent injunctive relief, it is of the type that is normally reduced to writing before becoming effective. See Ciamarella, 131 F.3d at 326 (finding that a settlement concerning perpetual rights was the type that is normally put into writing).

6

### III.   CONCLUSION

In sum, this Court finds that the totality of the evidence indicates that QVC never entered into a binding settlement agreement with Cartier. Accordingly, Cartier's motion to enforce the settlement is denied.

Dated:  New York, New York
         December 31, 2009

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.